UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

S.C. JOHNSON & SON, INC.,

      Plaintiff,

v.                                                   Case No. 11-cv-861-pp

NUTRACEUTICAL CORPORATION,
and NUTRAMARKS, INC.,

      Defendants.

---

**ORDER REQUIRING PLAINTIFF TO SUBMIT SUPPLEMENTAL BRIEFING ON DEFENDANT'S MOTION FOR JUDGMENT CONSISTENT WITH SEVENTH CIRCUIT'S OPINION (DKT. NO. 119), AND REQURING BOTH PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING ON THE DEFENDANT'S MOTION FOR ATTORNEYS' FEES (DKT. NO. 130)**

---

      Two motions remain pending in this case: (1) the defendants' November 28, 2016 motion for judgment consistent with the Seventh's Circuit opinion, dkt. no. 119; and (2) the defendants' motion for attorney fees, dkt. no. 130. On February 21, 2017, the court issued an order addressing many of the parties' arguments, but reserving ruling on the amount of disgorgement of profits to award the defendants. Dkt. No. 127. The court conducted a hearing on these issues on March 15, 2017, and ordered briefing on whether to award attorneys' fees to the defendants. Dkt. No. 128. Despite all of this, the court needs the parties to submit additional materials on both pending motions.

1

I.     **Background**

The parties participated in a two-day bench trial in front of the late Judge Rudolph Randa in February 2014. Dkt. No. 71. After post-trial briefing, Judge Rudolph Randa decided in favor of the plaintiff and dismissed the case. Dkt. No. 89. The defendants appealed, dkt. no. 109, and in October of 2016, the Seventh Circuit issued a decision remanding the case back to this court, dkt. no. 117. A month and a half later—November 28, 2016—the defendants filed a motion asking this court to enter judgment in accordance with the Seventh Circuit's opinion. Dkt. No. 119.

On February 21, 2017, after a full set of briefing, the court issued a decision in favor of the defendants. Dkt. No. 127. After recounting the procedural history of the case and addressing the parties' arguments, the court:

(1) declared that "the defendants have prior and senior nationwide common law rights to the mark BUG OFF in the United States; they own exclusive rights in the BUG OFF mark; the plaintiff's trademarks in BUG OFF are invalid," id. at 3;

(2) ordered that "The United States Patent and Trademark Office shall cancel all trademark registrations for insect repellants owned by the plaintiff that use the term BUG OFF, including but not limited to Registration Nos. 3,963,304 for BUG-OFF; 3,303,024 for BUGOFF! and design (the 'Kaz Registration'); 2,369,898 for BUG-OFF (the 'Chervitz Registration')" and that "the United States Patent and

Trademark Office [] issue final rejections and refusals to any pending trademark applications owned by SCJ that use the term BUG OFF for insect repellants, including application serial nos. 78/208,245 for BUG-OFF and 78/981,457 for BUG-OFF," id. at 3-4;

(3) found that "the public would be best served by granting the defendants' request for permanent injunctive relief against the plaintiff," id. at 6;

(4) found that "[i]n order to deter the plaintiff from viewing its conduct as a mere cost of doing business . . . the equities favor an award of profits," id. at 8; and

(5) concluded that "awarding over $5.8 million—the plaintiff's entire profit on the two products using the BUG OFF mark on the back of the can—would be a windfall to the defendants," id. at 9.

At the end of its order, the court set a date for oral argument, at which the court would take up "the award of profits, the award of costs and fees, and the question of who is to draft the proposed judgment." Id.

The court heard argument on March 15, 2017. Dkt. No. 128. The defendants revised their argument according to the court's February 21, 2017 order, and asked the court to award them approximately $4.4 million of the plaintiff's profits. Id. The plaintiff, on the other hand, did not revise its argument, continuing to assert that the court should award the defendants zero dollars of the plaintiff's profits. Id. As to costs, the plaintiff stated that it would not contest the defendants' entitlement to costs, but forecast that it

might contest the amount of those costs when the defendants filed their bill of costs. Id. As to attorneys' fees, the court asked the parties to provide briefing on the subject. Id. The parties conceded their preference that the court draft the judgment. Id.

Three weeks later, on April 7, 2017, the defendants filed a motion for attorney fees. Dkt. No. 130. The plaintiff responded on April 24, 2017, dkt. no. 132, and the defendants replied on May 15, 2017, dkt. no. 134.

## II. Motion for Judgment Consistent with the Seventh Circuit (Dkt. No. 119)

### A. Court's February 21, 2017 order

The court already has found that the defendants are entitled to an award of some portion of the plaintiff's profits. See Dkt. No. 127. Determination of the amount remains. Specifically, the court has said:

> The amount, if any, of the plaintiff's profits to award is a nuanced determination. As early as 2003, the plaintiff was aware that Sunfeather Natural Soap Company, Inc. asserted rights in the BUG OFF mark, which it claimed to have been using since 1992. It also knew that there was a likelihood of confusion between the marks. Heedless of Sunfeather's claim, it began to sell infringing products in 2010, placing the mark on the back of its can. However, unlike Sunfeather's use of the mark, the BUG OFF mark is not the primary brand for any of the plaintiff's bug repellant products. It exists only as a tertiary brand that never has appeared on the front of any of the plaintiff's product[s]. The plaintiff's strategy in adding the contested mark to the back of the can is suggested by its lack of advertising for, or market research on, the mark.
>
> In order to deter the plaintiff from viewing its conduct as a mere cost of doing business, ***the court finds that the equities favor an award of profits***. Judge Randa determined that 'for the entire time period of SCJ's sales from 2010 through 2013, when it applied to the $11.6 million dollars in gross sales, SCJ's total revenue was $5,886,523.' Dkt. No. 89, at 13. This court finds that

4

the plaintiff's profits on the 2.1 million units of 9- and 11-ounce Off! BUG OFF aerosol spray cans sold from 2010 through the trial were $5,886,523. [footnote omitted]

      The court concludes, however, that awarding over $5.8 million—the plaintiff's entire profit on the two products using the BUG OFF mark on the back of the can—would be a windfall to the defendants. See Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 963 (7th Cir. 1992). In that case, the Seventh Circuit found problematic an award of a percentage of the wrongdoer's profits. See id.

Dkt. No. 127 at 8-9.

    B.    Parties' Arguments at the March 15, 2017 Hearing

At the March 15, 2017 hearing, the defendant asked the court award it $4,458,263.66 in disgorgement of profits. Dkt. No. 128. To arrive at this number, the defendants used trial exhibit 31, observing that from 2010 to 2012, the plaintiff made a gross profit of $8,920,493 from sales of infringing products. The defendants then noted that the plaintiff had established deductions for that same period of $5,518,442, leaving a net profit of $3,402,051. The defendants divided the plaintiff's net profit by their gross product (approximately 3.4 million/approximately 8.9 million) to get a "profit ratio" of 38%. The defendants then looked to the trial transcript at page 141 for evidence that the plaintiff had $2,779,507 in gross profits from sales of the infringing products in 2013. The trial had produced no evidence of deductions or costs on this number, so the defendants proposed to bring their award down from their original request for $5.8 million by applying the 38% profit ratio (taken from the 2010-2012 numbers) to the 2013 number, to arrive at $1,056,212.66 in net profits for 2013. Then, they added the net profits for

5

2010-2012 ($3,402,051) to the net profits for 2013 ($1,056,212.66), for a total requested award of $4,458,263.66.

The defendants justified their request by citing <u>WMS Gaming Inc. v. WPC Prod. Ltd.</u>, 542 F.3d 601 (7th Cir. 2008), for the proposition that the Seventh Circuit has placed the burden on the trademark infringer to prove its costs or deductions, once the defendants have proven the plaintiff's sales. <u>Id.</u>, 542 F.3d at 608-09. Here, the defendants asserted, the plaintiff failed to prove apportionment—the plaintiff produced no evidence of the profits that are attributable to the use of the infringing, BUG OFF mark. As for whether an award of approximately $4.4 million constitutes a windfall, the defendants argued that $4.4 million is a very small percentage of the defendant's total profit across all product lines for the affected years. The defendants pointed to page 139 of the trial transcript for the proposition that the plaintiff accrued $165 million gross profit in 2013 on insect repellant sales alone; $4.4 million would amount to approximately 2.7% of the total profit for just that year. In sum, the defendant argued, $4.4 million would be a large enough award to be a deterrent, but not so great as to become a punishment.

In response, the plaintiff said that the court should award the defendants a sum of zero dollars for disgorgement of profit because the sales numbers that the defendants cited are for sales attributable to the use of the OFF! mark, not from the BUG OFF mark. The plaintiff accused the defendants of making inconsistent arguments—for instance, at trial, the defendants tried to argue that the plaintiff's use of the BUG OFF mark was only strategic and

6

inconsequential, but post-remand they argued the BUG OFF mark's importance to the plaintiff's profits.[1] The plaintiff cited testimony from Anne Brolly at pages 138-148 of the trial transcript, where she testified that the primary mark on these cans was "OFF" and "Deep Woods Off." It pointed to Ms. Brolly's testimony that "BUG OFF" was a catchy slogan and noted that the defendants pressed Ms. Brolly on whether the plaintiff spent any money advertising the BUG OFF mark. The plaintiff directed the court to the Seventh Circuit's jury instruction on disgorgement of profits, which, they say, required the defendants to link the profit to the infringing use. Because the defendants did not show such a link, the plaintiff argued, the court should decline to award disgorgement of profits.

As for what amount would constitute a windfall for the defendants, the plaintiff noted that the defendants bought the previous owner of the BUG OFF mark, Sunfeather, in 2011 for $285,000. It pointed to trial exhibit 221—the closing index of the acquisition docket—and noted that that $285,000 included trademarks, unregistered trademarks, product line and product on the shelf. The plaintiff observed that the defendants' sales numbers per year in 2013 were $15,000, which it argued showed that the BUG OFF mark is worth a fraction of $285,000. Finally, the plaintiff pointed to Sands, 978 F.2d at 963, and noted that, after remand, the district court in that case awarded a

---

[1] Interestingly, Judge Randa noted that during the trial phase of this case, it was the *plaintiff* who took inconsistent positions: "At best, [the plaintiff]'s position regarding the proper test for establishing nationwide common law rights is chameleonic, and its contradictory behavior concerns the Court." Dkt. No. 89 at 26.

7

disgorgement amount for infringing use of a primary mark that constituted .5% to 1% of the total year of sales. The plaintiff did not propose a specific amount of award, but spent its time re-arguing the question of whether the court should award profits at all.

In reply, the defendants noted (correctly) that this court already had found disgorgement of profits to be proper because of the plaintiff's awareness of Sunfeather's mark since 2003. They pointed to the trial transcript at pages 40 and 41, where the plaintiff's corporate counsel, Sally Davis, testified as to the BUG OFF mark's importance. They reminded the court that the plaintiff has the burden to apportion its profits, and asserted that the evidence does not show that the OFF mark was the only reason for the sales. They reiterated that an award of $4.4 million would be proper given the total profit that plaintiff makes in the insect market.

    C.    <u>Court's Analysis</u>

In its oral argument, the plaintiff never proposed a number for the appropriate amount of an award of disgorgement of profits. Instead, it spent its time contending—in several different ways—that the award should be zero dollars. The problem with this approach is that in its February 21, 2017 order, the court already had rejected these arguments. The question of "whether an award of disgorgement of profits was proper" was—and is—no longer at issue; the court set the hearing for an argument as to what a reasonable amount of profits would be, given its finding that $5.8 million would be a windfall. While citing the <u>Sands</u> case, the plaintiff never proposed what a reasonable royalty

8

fee would look like, opting instead to re-litigate issues already decided by the court. If the plaintiff wanted to revisit the disgorgement of profits issue, it could have recited the standard for reconsideration and made an argument on that basis. Instead, the plaintiff ignored the court's February 21, 2017 order finding that an award of profits was proper.

The plaintiff's arguments at oral argument were non-responsive to the only remaining issue on the defendants' motion for judgment consistent with the Seventh Circuit's opinion—the amount of the award. The court will now give the plaintiff a *last* chance to accept the fact that the court has found that an award—of some amount—is warranted under the facts of the case, and to propose a reasonable award amount and justify that proposal.

The court advises the plaintiff to avoid engaging in any gamesmanship, such as proposing an award of $1.00 or some other nominal amount. The plaintiff cited the Sands case, implying that at the very least, it understands that an award of .5% to 1% is likely to be considered reasonable by some courts. If, after the court gives it this final opportunity, the plaintiff refuses to propose—and justify—a reasonable amount for an award, the court will make its decision with the only rationale it has before it: the defendant's.

### III. Defendant's Motion for Attorney's Fees (Dkt. No. 130)

#### A. Standard for Attorneys' Fees in Lanham Act Cases

The court also will briefly address the defendants' motion for attorneys' fees. At the end of the Lanham Act's subsection on "recovery for violation of rights," it provides that "[a] court in exceptional cases may award reasonable

9

attorney fees to the prevailing party." 15 U.S.C. §1117(a). "Exceptional cases" is not a defined term in the Lanham Act, but in 2010, the Seventh Circuit elaborated that:

> [A] case under the Lanham Act is 'exceptional,' in the sense of warranting an award of reasonable attorneys' fees to the winning party, if the losing party was the plaintiff and was guilty of abuse of process in suing, or if the losing party was the defendant and had no defense yet persisted in the trademark infringement or false advertising for which he was being sued, or in order to impose costs on his opponent.

Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 626 F.3d 958, 963-64 (7th Cir. 2010). The court explained:

> It should be enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable—was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponents—in other words only because it was extortionate in character if not necessarily in provable intention. That should be enough to make a case 'exceptional.'

Id.

In the years since 2010, various cases in this district and the Western District of Wisconsin analyzed claims for Lanham Act attorneys' fees under Nightingale's "abuse of process" or "objectively unreasonable" standard. Modern Fence Techs., Inc. v. Qualipac Home Improvement Corp., No. 08-C-0543, 2011 WL 2532486, at *5-6 (E.D. Wis. June 24, 2011); Agrace Hospicecare, Inc. v. Saint Jude Hospice-Wisconsin, LLC, No. 11-CV-537-BBC, 2012 WL 13042517, at *2 (W.D. Wis. Feb. 29, 2012); Out RAGE, LLC v. New Archery Prod. Corp., No. 11-CV-701-BBC, 2013 WL 12234188, at *25 (W.D. Wis. June 25, 2013); Zeltiq Aesthetics, Inc. v. Brown Health Relaxation Station

10

LLC, No. 13-C-575, 2014 WL 1818154, at *5 (E.D. Wis. May 6, 2014); Brainstorm Interactive, Inc. v. Sch. Specialty, Inc., No. 14-CV-50-WMC, 2014 WL 6893881, at *18 (W.D. Wis. Dec. 5, 2014). The Seventh Circuit itself, in Burford v. Accounting Practice Sales, Inc., 786 F.3d 582, 590 (7th Cir. 2015), relied on the Nightingale standard.

On April 29, 2014, however, the Supreme Court decided Octane Fitness, LLC v. ICON Health & Fitness, Inc., ___ U.S. ___, 134 S. Ct. 1749 (2014). In Octane Fitness, the Supreme Court considered section 285 of the Patent Act, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Id. at 1755 (citing 35 U.S.C. §285). The Court went on to construe "exceptional cases" as those that

> stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Octane Fitness, LLC., 134 S. Ct. at 1756.

This is a Lanham Act case and not a Patent Act case. The Third, Fourth, Fifth, Sixth, Ninth, Eleventh and Federal Circuits, however, all have recognized that Octane Fitness changed the standard for fee shifting under the Lanham Act. See Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 313-15 (3d Cir. 2014); Georgia-Pacific Consumer Products, LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015); Baker v. DeShong, 821 F.3d 620, 621-25 (5th Cir. 2016); Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 317-18 (6th Cir. 2015); SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 839 F.3d

11

1179, 1180 (9th Cir. 2016); Tobinick v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018); Romag Fasteners, Inc. v. Fossil, Inc., 866 F.3d 1330, 1334 (Fed. Cir. 2017). One court in this district has applied Octane Fitness when analyzing attorneys' fees under the Lanham Act. See Brady Worldwide, Inc. v. Haz-Mat Response Technologies, Inc., Case No. 15-CV-643-JPS, 2016 WL 7839150 (E.D. Wis. Aug. 17, 2016).

The court notes that the Seventh Circuit has not yet ruled on whether Octane Fitness applies to 15 U.S.C. §1117. The Supreme Court issued its decision in Octane Fitness on April 29, 2014; the Seventh Circuit heard argument in Burford on December 8, 2014 (over seven months later), and issued its decision in that case on May 13, 2015, never mentioning Octane Fitness. Neither party's brief discusses whether Octane Fitness applies with regard to attorneys' fees calculations under the Lanham Act, or what (if any) effect that the court's application of Octane Fitness might have on the defendants' motion. It is unclear to the court whether the parties omitted arguments about Octane Fitness by choice—the plaintiff's counsel mentioned "a Supreme Court case" when asked about attorneys' fees at the March 15, 2017 hearing—or whether the parties inadvertently missed the possible application of this case. Regardless, the court would like the parties to provide supplemental briefing addressing whether the court should apply Octane Fitness in making an attorneys' fees determination, and if so, what effect the application of that case has on the defendants' motion for attorneys' fees.

## IV. Conclusion

The court **ORDERS** that by the end of the day on **August 17, 2018**, the plaintiff shall provide the court with a proposed amount for a damages award, along with an explanation of how the plaintiff reached that amount and why it is appropriate. This is the plaintiff's final opportunity to have a say on the amount of damages; there will be no further briefing on this issue.

The court **ORDERS** that by the end of the day on **August 17, 2018**, the parties shall submit simultaneous, supplemental briefs on the question of whether Octane Fitness applies to the question of attorneys' fees under the Lanham Act, and if so, how its application impacts the defendants' motion for attorneys' fees. There will be no further briefing on this issue beyond the August 17, 2018 supplemental briefs.

Dated in Milwaukee, Wisconsin this 17th day of July, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**